IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Paula Campbell,<br><br>    Plaintiff,<br><br>v.<br><br>Anesthesia Management Solutions, LLC,<br><br>    Defendant. | Case No.: 5:20-cv-3538-SAL<br><br><br>**OPINION AND ORDER** |

  This matter is before the Court for review of the July 14, 2021 Report and Recommendation of United States Magistrate Thomas E. Rogers, III (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (D.S.C.). [ECF No. 16]. Defendant filed a motion to dismiss, asserting it is entitled to dismissal on two alternative grounds. [ECF No. 9]. First, Defendant argues the first amended complaint must be dismissed pursuant to Fed. R. Civ. P. 17(a)(3) because Plaintiff failed to name or substitute the real party in interest. Alternatively, Defendant moves the Court to require Plaintiff to name the real party in interest, to compel arbitration, and to dismiss the first amended complaint. In the Report, the Magistrate Judge rejected Defendant's arguments that Paula Campbell is not the real party in interest. [ECF No. 16]. Accordingly, the Magistrate Judge did not recommend dismissal under Rule 17(a)(3) nor did he recommend requiring Plaintiff to substitute another party. *Id.* However, the Magistrate Judge recommended that Defendant's motion be granted as to Defendant's request that the case be compelled to arbitration and dismissed. *Id.* Plaintiff filed timely objections to the Report, ECF No. 17, and Defendant replied, ECF No. 18. The matter is ripe for ruling. For the reasons outlined herein, the Court adopts the Report as modified by this Order.

1

## BACKGROUND

On July 14, 2021, the Magistrate Judge issued a thorough Report and Recommendation.  The Report sets forth in detail the relevant facts and standards of law on this matter.  *See* [ECF No. 16]. This Court incorporates those facts and standards without a recitation, except to clarify one point of law.   Defendants, *inter alia,* moved to dismiss this action and compel arbitration pursuant to Federal Rule of Civil Procedure 12(b)(3) and the Federal Arbitration Act.  [ECF No. 9 p.1]; Fed. R. Civ. P. 12(b)(3); 9 U.S.C. § 1 *et seq*.  The Magistrate Judge found the motion to dismiss and compel arbitration was most properly considered a motion to dismiss for improper venue under Rule 12(b)(3).  [ECF No. 16 p.4].  The Magistrate Judge reasoned, citing pre-2013 Fourth Circuit authority, that (b)(3) was the proper subsection of Rule 12 because an arbitration clause is "a specialized kind of forum-selection clause."  *Id.*  While the Magistrate Judge's choice to consider the motion under Rule 12(b)(3) had no substantive effect on the Report, it was technically erroneous.

"Prior to 2013, Rule 12(b)(3) was considered the proper vehicle by which a party may move to dismiss an action for improper venue based on a forum-selection clause." *Hyundai Merch. Marine Co. v. ConGlobal Indus., LLC*, No. 2:15-CV-01562-DCN, 2015 WL 13841411, at *3 (D.S.C. Nov. 4, 2015) (citing *Atlantic Floor Servs., Inc. v. Wal–Mart Stores, Inc.*, 334 F. Supp. 2d 875, 877 (D.S.C. 2004)).  However, in *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, the law changed when the Supreme Court of the United States addressed the procedure that is available for a defendant in a civil case who seeks to enforce a forum-selection clause.  571 U.S. 49 (2013).  In *Atlantic Marine*, the Court held that Rule 12(b)(3) allows dismissal *only* when venue is wrong or improper, a determination that "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue

laws." *Id*. at 577. The Court held that a forum-selection clause does not itself make venue improper. *Id.* Accordingly, dismissal under Rule 12(b)(3) is not available in this case.

Instead, the motion is best analyzed under sections three and four of the Federal Arbitration Act. 9 U.S.C. § 3-4. *See Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.,* 807 F.3d 553, 563 (4th Cir. 2015) (applying sections three and four of the Federal Arbitration Act instead of Rule 12(b)(3)). Section three requires a court to stay the trial of an action on issues that are subject to arbitration. 9 U.S.C. § 3. However, when every claim in a case must be submitted to arbitration, the court may dismiss the case instead of staying it. *Alford v. Dean Witter Reynolds, Inc.,* 975 F.2d 1161, 1164 (5th Cir. 1992); *Sea–Land Service, Inc. v. Sea–Land of P.R., Inc.,* 636 F. Supp. 750, 757 (D. Puerto Rico 1986); *Sparling v. Hoffman Const. Co., Inc.,* 864 F.2d 635, 638 (9th Cir. 1988); *Hoffman v. Fidelity and Deposit Co. of Maryland,* 734 F.Supp. 192, 195 (D.N.J. 1990); *Dancu v. Coopers & Lybrand,* 778 F. Supp. 832, 835 (E.D. Pa. 1991). Section four allows a district court of competent jurisdiction to compel arbitration where appropriate. 9 U.S.C. § 4. Section three empowers the court to stay or dismiss the action while section four empowers the court to compel arbitration. *See Chorley*, 807 F.3d at 563 ("Sections 3 and 4 in turn 'provide[ ] two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4.'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). Therefore, Defendant's motion to dismiss and compel arbitration is best analyzed under sections three and four of the Federal Arbitration Act. Despite the Magistrate's consideration of the motion under Federal Rule of Civil Procedure 12(b)(3), the legal standard is the same: if every claim in this action must be submitted to arbitration, the Court will dismiss the case without prejudice and compel arbitration.

3

## REVIEW OF A MAGISTRATE JUDGE'S REPORT

The Court is charged with making a *de novo* determination of those portions of the Report to which specific objections are made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). A district court, however, is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See id.*; Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which the party has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate's Report thus requires more than a reassertion of arguments from the pleading or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing

*Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (emphasis added) (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47).

## DISCUSSION

Plaintiff's specific objections to the Report are as follows:

> (I) The Plaintiff cannot be held to the arbitration clause in the Contract between [Anesthesia Management Solutions, LLC ("AMS")] and Sleep Away LLC because the Plaintiff is not a party to that Contract or an intended third-party beneficiary;
>
> (II) That the scope of the Arbitration Agreement in the Contract does not include [Family Medical Leave Act ("FMLA")] claims against AMS by [Certified Nurse Anesthetists ("CRNAs")].

[ECF No. 17, p.1].

**I.   Plaintiff is not bound by the agreement to arbitrate under a third-party beneficiary theory, but she is bound under the doctrine of equitable estoppel.**

Plaintiff argues that the Magistrate Judge applied the wrong law to the question of whether Plaintiff, a non-signatory to the Independent Contractor Agreement for CRNA Processional Services ("Contract"), could be bound by the Contract's arbitration clause. [ECF No. 17, p.3]. Plaintiff's position is as follows:

> Judge Rogers correctly found that Florida law should apply to his analysis concerning arbitrability. He then inexplicably applies South Carolina law in the middle of his analysis. Had he applied Florida law—which is more stringent that [sic] South Carolina law—he would have concluded that the Plaintiff does *not* meet the Florida definition of "intended third party beneficiary" and cannot be held to the subject Contract.

*Id.* This Court will review the Magistrate Judge's determination that Plaintiff is bound by the arbitration clause *de novo*.

It is undisputed that the parties to this action are Paula Campbell and AMS, but the parties to the Contract are Sleep Away, LLC and AMS.  The question before the Court is whether Plaintiff can be bound by the arbitration agreement in the Contract to which she is not a party.  It is also undisputed that this Court must apply Florida law to answer that question.

As an initial matter, the Magistrate Judge did not err by applying South Carolina law instead of Florida law.  Plaintiff claims that, when considering whether Plaintiff is an intended third-party beneficiary, he erroneously turned to South Carolina law by considering *Pearson v. Hilton Head Hospital*, 400 S.C. 281, 733 S.E.2d 597 (Ct. App. 2012).  [ECF No. 17, p.4].  That is not the case.  The Magistrate Judge clarified that he considered *Pearson* persuasive authority even though he was applying Florida law.  [ECF No. 16, p.11 n.4] ("Even though Florida state law is applicable here, the holding in *Pearson* is instructive.").  However, Plaintiff argues that differences in South Carolina and Florida law related to third-party beneficiaries make *Pearson* of little persuasive value.  [ECF No. 17, p.4-5].  Without deciding whether South Carolina and Florida law are significantly different on the third-party beneficiary question, this Court will focus its analysis on mandatory Florida state authority.

Under Florida Law, a signatory to a contract containing an arbitration agreement ordinarily cannot compel a non-signatory to submit to arbitration.  *See, e.g., Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 943 (Fla. Dist. Ct. App. 2004).  However, this rule is subject to certain exceptions.  *Id.* Two exceptions to this general rule warrant consideration based on the record before the Court: (1) third-party beneficiaries; and (2) equitable estoppel.[1]

---

[1] Other exceptions to the general rule include incorporation by reference, assumption, agency, and veil-piercing/alter ego.  *Core Prop. Cap., LLC v. Profor Sec., LLC*, No. 2:15-CV-209-FTM-29, 2015 WL 4606124, at *4 (M.D. Fla. July 30, 2015); *World Rentals & Sales, LLC v. Volvo Const. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008).  At this point, Defendant has not

### A. Defendant cannot compel Plaintiff to arbitrate the case as a third-party beneficiary to the Contract.

The third-party beneficiary exception is as follows: "a nonsignatory to an arbitration agreement may be bound to arbitrate if the nonsignatory has received something more than an incidental or consequential benefit of the contract, or if the nonsignatory is specifically the intended third-party beneficiary of the contract." *Germann v. Age Inst. of Fla., Inc.*, 912 So. 2d 590, 592 (Fla. Dist. Ct. App. 2005). This exception only applies to bind a non-signatory third-party to an arbitration clause if the third-party sues to enforce the contract containing the arbitration clause. *Mendez v. Hampton Ct. Nursing Ctr., LLC*, 203 So. 3d 146, 149 (Fla. 2016). "Florida courts will not enforce an arbitration against a third-party who does not bring suit as a third-party beneficiary for the benefit of a contract signed by others." *Torres v. Starbucks Corp.*, No. 8:20-CV-1311-CEH-TGW, 2021 WL 964219, at *5 (M.D. Fla. Mar. 15, 2021).

If Plaintiff is not suing to enforce the Contract, the arbitration clause is not enforceable against Plaintiff. *Mendez*, 203 So. 3d at 149. Therefore, the Court must determine whether Plaintiff is suing to enforce a contractual right. *See Torres*, 2021 WL 964219, at *4. The Court finds that she is not.

In *Mendez*, the Supreme Court of Florida held that a plaintiff was not suing to enforce a contract between other parties as a third-party beneficiary where he sued for negligence and statutory violations rather than to enforce his son's contract with the defendant. 203 So. 3d at 149. The court had to determine whether a father was bound by an arbitration clause in a nursing home contract signed by the defendant nursing home and his son. *Id.* at 147. The court acknowledged

---

advanced any of the other exceptions, but it has noted that it does not waive a veil-piercing/alter ego argument. *See* [ECF No. 18, p.8].

that a third-party beneficiary is bound by an arbitration clause in a contract under which the party claims third-party beneficiary status. *Id.* at 149. However, the court found that the father was not suing to enforce the contract as a third-party beneficiary because the father sued for negligence and statutory violations—not to enforce the son's contract with the defendant. *Id.* Accordingly, the court found that the Plaintiff father was not bound by the arbitration clause. *Id.*

Similarly, in *Torres*, the United States District Court for the Middle District of Florida held that a plaintiff was not bound by an arbitration clause in his wife's contract with the defendant because he sued to vindicate his own statutory rights rather than to enforce his wife's contract. 2021 WL 964219, at *5. The plaintiff in *Torres* filed an action for statutory damages and injunctive relief arising from the defendant's alleged violation of the Employee Retirement Income Security Act of 1974 ("ERISA") as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). *Id.* at 1*. The plaintiff was covered by the defendant's Starbucks Health Plan until his wife was terminated from her employment with Starbucks, at which point defendant allegedly provided him with an insufficient enrollment notice. *Id.* The court reasoned that the third-party beneficiary doctrine did not bind the plaintiff to the arbitration clause in his wife's contract merely because that contract conferred a benefit on him. *Id.* at *5. Because plaintiff sued to enforce his own rights under ERISA and COBRA instead of suing to enforce his wife's contract for his benefit, defendant could not compel plaintiff to arbitrate his case as a third-party beneficiary of the contract. *Id.*

Here, like the plaintiffs in *Mendez* and *Torres*, Plaintiff is not suing to enforce the Contract containing the arbitration clause. In the amended complaint, Plaintiff alleges three causes of action: (1) FMLA Interference pursuant to 29 U.S.C. §§ 2601 *et seq*.; (2) FMLA discrimination; and (3) FMLA retaliation pursuant to 29 U.S.C. § 2615(a)(2). [ECF No. 6]. Plaintiff does not

8

allege breach of contract, and her causes of action do not seek to enforce the Contract. Instead, like the plaintiffs in *Mendez* and *Torres*, Plaintiff alleges statutory violations that arise from federal law rather than the Contract. Because Plaintiff is suing to enforce her FMLA rights instead of suing to enforce the Contract between AMS and Sleep Away, LLC for her benefit, Defendant cannot compel Plaintiff to arbitrate the case as a third-party beneficiary.

In the Report, the Magistrate Judge focused the third-party beneficiary analysis on whether "the contract clearly expresses an intent to primarily and directly benefit the third party or a class of persons to which that party belongs." *Morgan Stanley DW Inc. v. Halliday*, 873 So. 2d 400, 403 (Fla. Dist. Ct. App. 2004). This was error. That inquiry is relevant to determine whether a non-party may sue or be sued *under the contract*. *Id.* If a contract clearly expresses an intent to primarily and directly benefit the plaintiff, *and* the plaintiff "claims third party beneficiary status" or "sues under a contract to which the plaintiff is not a party," then Florida courts will enforce an arbitration clause contained in that contract absent some other defense. *Mendez*, 203 So.3d 146. However, where, as here, a plaintiff is not seeking to claim third-party beneficiary status or enforce the contract, there is no need to determine whether the contract primarily and directly benefits plaintiff. Accordingly, the discussion of *Morgan Stanley*, *Core Prop.*, and *Pearson* in the Report, objection, and reply does not affect this Court's analysis. Because Plaintiff is not suing to enforce the Contract, she cannot be bound by the arbitration clause as a third-party beneficiary.

**B. Plaintiff is bound by the arbitration agreement in the Contract by the doctrine of equitable estoppel.**

Under Florida law, a non-signatory can be bound to an arbitration agreement based on estoppel. *Torres v. Starbucks Corp.*, No. 8:20-CV-1311-CEH-TGW, 2021 WL 964219, at *4 (M.D. Fla. Mar. 15, 2021) (citing *Johnson v. Pires*, 968 So. 2d 700, 702 (Fla. 4th DCA 2007)). "In seeking to compel a non-signatory plaintiff to arbitrate, the signatory 'must show both that the plaintiff is

9

relying on a contract to assert its claims and that the scope of the arbitration clause in that contract covers the dispute.'" *Id.* at 5* (quoting *Leidel v. Coinbase, Inc.*, 729 F. App'x 883, 887 (11th Cir. 2018)). A party may not rely on a contract to establish her claims while avoiding her obligation to arbitrate such claims. *BDO Seidman, LLP v. Bee*, 970 So. 2d 869, 875 (Fla. Dist. Ct. App. 2007).

In *Xerox Corp. v. Smartech Document Management, Inc.*, the District Court of Appeal of Florida held that an individual who signed an agreement and arbitration clause on behalf of an entity was bound by the arbitration clause under the doctrine of equitable estoppel because his claims were based upon, and intertwined with, the contract containing the arbitration clause. 979 So. 2d 957, 960 (Fla. Dist. Ct. App. 2007). In *Xerox*, plaintiffs Jose Hernandez and Smartech Document Management, Inc. sued defendant Xerox for defamation, intentional infliction of emotional distress, injunctive relief, respondeat superior, and intentional interference with an advantageous business relationship. *Id*. Jose Hernandez was the president and principal shareholder of Smartech, which was an authorized Xerox sales agent selling copiers and equipment pursuant to a "Xerox Business Relationship Agreement." *Id.* at 959. Hernandez signed the Agreement as president of Smartech. *Id.* Xerox terminated the Agreement because of alleged unethical conduct involving Smartech's customers that purchased copiers and then failed to pay for them. *Id.* Smartech claimed that Xerox and one of its agents made false statements to third parties, including colleagues and customers, that Smartech and Hernandez had stolen equipment, and had conspired to defraud them. *Id.*

The court found the Xerox Business Relationship Agreement between Smartech and Xerox contained an enforceable arbitration clause that covered the claims, so Smartech's claims had to be arbitrated. *Id.* Importantly, the court also found that Hernandez, individually, was also bound

10

by the arbitration clause, even though he did not sign the agreement in his individual capacity. *Id.* The court found Hernadez was estopped from avoiding the arbitration clause because he signed the agreement on behalf of Smartech, and he was Smartech's owner, president, authorized agent, and employee. *Id.* Further, the court reasoned that Hernandez's claims were based upon, and intertwined with, the underlying contract between Xerox and Smartech. *Id.* Under these facts, the court held that the doctrine of equitable estoppel applied, and Hernandez was bound by the arbitration clause. *Id.*

*Xerox* highlights a difference between the way Florida courts apply the doctrine of equitable estoppel and the third-party beneficiary exception. The *Xerox* court found the individual plaintiff relied on the contract in bringing his claims even though he was not suing to enforce the contact. *Id.* None of the causes of action in *Xerox* were for breach of contract or sought to enforce a contractual right. Nevertheless, the court found that equitable estoppel applied because Hernandez's claims were "based upon, and intertwined with, the underlying contract." *Id.* This is a different standard than the third-party beneficiary exception, which applies only if the third-party sues to enforce the contract containing the arbitration clause. *Cf. Mendez, LLC*, 203 So. 3d at 149. In sum, *Xerox* stands for the proposition that equitable estoppel may apply to bind a non-signatory to an arbitration clause even when a third-party beneficiary theory would not.

In *Torres*, the United States District Court for the Middle District of Florida took a different approach. 2021 WL 964219. The plaintiff in *Torres* filed an action for statutory damages and injunctive relief arising from the defendant's alleged violation of ERISA as amended by COBRA. *Id.* at 1*. The plaintiff was covered by the defendant's Starbucks Health Plan until his wife was terminated from her employment with Starbucks, at which point defendant allegedly provided him with an insufficient enrollment notice. *Id.* In addition to considering whether the plaintiff met the

11

third-party beneficiary exception, the *Torres* court considered whether the equitable estoppel exception applied. *Id.* at *4-5. The court held the defendant could not compel the plaintiff to arbitration based on the doctrine of equitable estoppel. *Id.* at *5. The court reasoned that plaintiff was not suing to enforce the contract, and the plaintiff's claims were based not on the terms of the employment contract between his wife and the defendant, but on his own rights. *Id.* Accordingly, plaintiff was not "relying on the contract" such that he was estopped from repudiating the contract's arbitration clause. *Id.*

Here, Plaintiff's claims are based upon, and intertwined with, the Contract, and the doctrine of equitable estoppel binds Plaintiff to the arbitration agreement. While Plaintiff argues her FMLA claims are not dependent on the Contract, the relationship between AMS and Plaintiff is inextricably linked to the agreement. It is true that Plaintiff's claims arise from federal law and not the contract. However, unlike the plaintiff in *Torres*, whose rights arose from the existence of his wife's employment agreement but were not affected by its terms, the Plaintiff here brings claims that depend on the nature of her relationship with AMS: a relationship that was governed by the terms of the Contract. Even after amending the complaint to drop her breach of contract claim, Plaintiff cannot avoid relying on the terms of the Contract. She alleges "the Employment Contract gave AMS a high level of control over the Plaintiff. . ." [ECF No. 6, ¶15]. The Contract gives rise to Plaintiff's relationship with AMS but, more importantly, its terms affect the nature of their relationship. The nature of their relationship determines whether Plaintiff was an employee within the meaning of the FMLA, an inquiry that is the basis of Plaintiff's claims.

Further, like the individual plaintiff in *Xerox*, who signed the agreement on behalf of Smartech as its owner, president, authorized agent, and employee, the Plaintiff here signed the agreement on behalf of Sleep Away, LLC as its only registered agent, organizer, and employee. While the Court

12

is not disregarding Sleep Away, LLC as an entity under a veil-piercing or alter ego theory, the *Xerox* court found the plaintiff's individual involvement supported applying the doctrine of equitable estoppel. The same is true in this case. Plaintiff's claims arise from her relationship with AMS: a relationship that is based upon, and intertwined with, the Contract. Plaintiff was aware of the terms of the Contract because she signed it as the one person authorized to sign on behalf of Sleep Away, LLC. Accordingly, Plaintiff is estopped from repudiating the Contract's arbitration clause. The Court finds an enforceable agreement to arbitrate exists between Plaintiff and Defendant.

## II.     Plaintiff's claims are within the scope of the arbitration agreement.

Plaintiff argues the Magistrate Judge erred in concluding Plaintiff's FMLA claims fall within the substantive scope of the arbitration agreement. [ECF No. 17, p.13]. The Court reviews this finding *de novo*. The arbitration agreement in the Contract provides: "any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration." *See* [ECF No. 16, p.12].

The terms "arising out of" and "related to" are broad, but limit arbitration to issues that have a "direct relationship between the dispute and the performance of duties specified by the contract." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218–19 (11th Cir. 2011). "There is a 'federal policy favoring arbitration of labor disputes.'" *Id.* (quoting *Granite Rock Co. v. International Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted)). "When parties agree to arbitrate some matters pursuant to an arbitration clause, the 'law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration.'" *Id.* (quoting *Granite Rock Co.*, 561 U.S. at 298). A dispute must be related—with at least some directness—to performance of duties

13

specified by the contract to be covered by its arbitration clause. *Phillips v. NCL Corp. Ltd.*, 824 F. App'x 675, 679 (11th Cir. 2020).

As previously discussed, Plaintiff's claims arise from her relationship with AMS: a relationship that is based upon, and intertwined with, the Contract. Accordingly, her claims have a direct relationship with the contract, even though the claims arise from federal law rather than the agreement itself. *See McAdoo v. New Line Transp., LLC*, No. 8:16-CV-1917-T-27AEP, 2017 WL 942114, at *4 (M.D. Fla. Mar. 9, 2017). ("Because Plaintiffs' right to be paid is dependent upon the employment relationships governed by the owner operator agreements, their unpaid wage and overtime claims fall within the scope of the arbitration clause in those agreements."); *Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-CV-2341-T-02JSS, 2019 WL 5887179, at *2 (M.D. Fla. Nov. 12, 2019), *appeal dismissed,* No. 19-14935-JJ, 2020 WL 1243600 (11th Cir. Jan. 2, 2020) ("Plaintiff's rights under these [FMLA] statutes exist because of her status as an employee; this status arises from the terms of the employment agreement.").

Plaintiff argues that, because the Contract intended that AMS had no obligation to Plaintiff under the FMLA, Defendant should be estopped from contending the FLMA claim has a direct relationship to the duties specified by the Contract. [ECF No. 17, p.17]. Plaintiff argues the Contract clearly intended that AMS and the CRNAs would not have an employer-employee relationship; that AMS did not owe the CRNAs any employee rights under any circumstances; and that all employer-employee obligations under state and federal law fell to Sleep Away, LLC. *Id.* According to Plaintiff, it cannot be said that her claims bear a direct relationship to a duty in the Contract when the Contract meticulously disclaims any such duty. *Id.*

The Court is not persuaded. Plaintiff relies on one case in support of this contention: *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218–19 (11th Cir. 2011). In *Doe*, the United

States Court of Appeals for the Eleventh Circuit considered whether an employee's claims against a cruise line for rape and personal injuries fell within the scope of the arbitration provision contained in her employment contract. The court held that they did not because: "[t]he cruise line could have engaged in that tortious conduct even in the absence of any contractual or employment relationship with Doe. As a result, those [ ] claims are not an immediate, foreseeable result of the performance of the parties' contractual duties or Doe's services as a Princess Cruise Lines employee, and they are not within the scope of the arbitration clause." *Id.* at 1219 (quotation marks omitted). The court pointed out, by way of illustration, that a non-employee "could have brought these same . . . claims against the cruise line based on virtually the same alleged facts." *Id.* at 1220. The employee's remaining claims, however, were "based on allegations that are dependent on her status as a seaman employed by the cruise line and the rights that she derives from that employment status." *Id.* at 1221. Those claims, on the other hand, arose directly from her status as an employee and fell within the scope of the arbitration provision. *Id.* at 1220–21.

Here, Plaintiff's FMLA claims rely on her position that she should be considered an employee of AMS. Whether Plaintiff was an employee within the meaning of the FMLA depends on the nature of her relationship with AMS: a relationship that was governed by the terms of the Contract. Plaintiff provides no authority for the proposition that a Contract's intent to characterize her as an independent contractor estops the Defendant from asserting a direct connection between her FMLA claims and the Contract. That connection is present here. The Court finds no ambiguity regarding the scope of the arbitration clause, but, even if it did, it would resolve any such doubt in favor of arbitration. *Doe*, 657 F.3d at 1218–19. Plaintiffs' claims have a direct relationship with the Contract and, therefore, fall within the substantive scope of the arbitration agreement.

**CONCLUSION**

After reviewing the portions of the Report to which no objection was made for clear error, the Court finds none and adopts these portions of the Report. After *de novo* review of each part of the Report to which Plaintiff specifically objected, the Court hereby adopts the Report and Recommendation, ECF No. 17, as modified and incorporates it by reference herein. For the reasons discussed above, all Plaintiff's claims must be arbitrated. Defendant's motion, ECF No. 9, is GRANTED IN PART as to Defendant's request that the case be compelled to arbitration and dismissed. This action is dismissed without prejudice and Plaintiff's claims are compelled to arbitration pursuant to 9 U.S.C. § 4.

IT IS SO ORDERED.

September 14, 2021
Florence, South Carolina

/s/Sherri A. Lydon
Sherri A. Lydon
United States District Judge